## Loudenschlager et al. *versus* Benton et al.

1. The rolling stock and equipments of a railroad company may not be seized in execution after the company has become insolvent or has mortgaged its stock and equipments; but in such cases the equity that would restrain a sale, springs out of the insolvency, or the trusts created by the mortgage.

2. Where, however, there is a question in a case whether the company had power to mortgage, the court, without deciding it on a motion for a special injunction, will enjoin creditors and the sheriff from proceeding to sell property covered by the mortgage, but directing that the lien of the fi. fas. shall continue till further order.

At NISI PRIUS, *coram* WOODWARD, J.

The parties on the record stand as follows:—

David H. Loudenschlager, Assignee of the Richmond and Schuylkill Passenger Railway Company, Charles G. Imlay, and William Eckfelt *v.* Stephen Benton, Assignee of The State Saving Fund, Estlack & Harris, William Webster & Son, Stephen Coulter, Thomas E. Baxter, Joseph H. Siddall, Wainwright & Brothers, Joshua Spering, Assignee of the Seamen's Saving Fund Society, and William H. Kern, Sheriff of Philadelphia.

Motion for an injunction.

Opinion of the court, June 1, 1861, by

WOODWARD, J.—A bill in equity having been filed at the suit of the above named parties, I am moved, on injunction affidavits filed, to award a special or preliminary injunction to restrain Sheriff Kern from selling the cars, horses, harness and other personal property of The Richmond and Schuylkill Passenger Railway Co., on various executions issued at the re-

spective suits of the other defendants named, and now in his hands. Some of the executions issued out of the Supreme Court, some out of the District Court, and others out of the Common Pleas; and, together, they amount to an aggregate greatly exceeding the estimated value of the goods seized.

The complainants allege the due incorporation of the said Passenger Railroad Co.—that Imlay and Eckfelt are the trustees named in a certain mortgage made by said company of all their estates and property real and personal, to secure bonds issued and sold by them to the amount of one hundred thousand dollars—that the interest on said bonds has not been paid since the 1st of January, 1860—that the company is insolvent and unable to pay its debts, and has made an assignment of all of its property to David H. Loudenslager in trust for creditors, and that the property seized in execution is part of the necessary equipment of the railway of the company, and cannot be severed from the railway without totally suspending all its operations and destroying all its public benefits and advantages and its powers of earning profits.

The ground assumed by the plaintiffs in view of this state of facts, is that the property seized by the sheriff is not subject to levy and sale under execution for two reasons: first, because "it is in law an accession to the franchise, belonging to it as much as the rails of the road, and cannot therefore be sold by the sheriff; and secondly, because it is so mortgaged to the said Imlay and Eckfelt, and they have a constructive possession or lien upon the same which forbids the sale."

I am not prepared to affirm the first of the above propositions. That the rolling stock and equipments of a railroad company may not be seized in execution and sold by a sheriff after the company has become insolvent, or has mortgaged its stock and equipments, is supported by sound reasons and respectable authorities. But in such cases the equity which would restrain a sale at law, springs from the fact of insolvency, or from the trusts created by the mortgage. Where, however, the question is presented independently both of insolvency and mortgage trusts—where the exemption from levy and sale is claimed on no other ground than that of accession to the corporate franchise, I cannot agree that rolling stock and equipments are as much exempt as the rails of the road. I know of no reason why a railroad company's horses and carriages may not be seized in execution by a judgment creditor in the same manner as the horses and carriages of any other debtor—no reason, I mean, that is intrinsic and self-existent in the economy of the corporation. Reasons may arise out of the equities created in favor of other parties by a state of insolvency, or the fact of a mortgage. These shall be noticed here-

[Loudenschlager et al. *v.* Benton et al.]

after ; but apart from these considerations—considering a railroad company with reference only to its judgment and execution creditors—I suppose it holds its personal property as all other debtors do, subject to levy and sale for debts. It is attempted to apply the doctrine of fixtures, and to treat everything as part of the company's freehold which is essential to the carrying on of its appropriate business. That doctrine has never been so applied anywhere, I believe, certainly not here in Pennsylvania. If it be assumed that the company have a freehold in anything—even in the rails of their road or the ground whereon they rest, a particular lot of horses, harness, and cars, cannot be considered a part of the freehold, as between landlord and tenants, fixtures, or necessary articles ready to be used as fixtures sometimes are considered. Among the goods levied on in this instance are four cars unfinished, sleighs, stoves, omnibuses, two clocks, six shovels, a looking-glass, a carpet, a settee, and such like—are all these to be treated as fixtures— or, in the language of the bill, as accessories to the franchise ? They are, no doubt, all necessary to the successful prosecution of the company's business, and if cars and horses are to be exempted on ground so broad and indefinite, I do not see why everything in the levy is not equally entitled to exemption. Not to pursue this branch of the case further, I am of opinion that neither the company nor its assignee has an equity to demand a stay of a sheriff's sale of such goods and chattels as are in this levy.

How stands the case, then, upon the equities of the trustees in the mortgage?

I have had very great doubts whether I ought to recognize the mortgage at all. The act of incorporation gave the company authority to issue bonds, but does not mention a mortgage, nor refer, as most passenger railway acts of incorporation do refer, to the general railroad law of 1849, under which companies are empowered to mortgage their property. It may be true that, for purposes of organization, the general law of 1849 became a part of the special incorporation of this company, and yet not be true that the company's powers to contract debts and make securities are any greater than those expressly conferred in the act of incorporation. After the mortgage was made, a supplemental act, April 2d, 1860, was procured, which reads thus : " That every act of assembly authorizing any passenger railway company in the city of Philadelphia to issue bonds, shall be construed to authorize such company to mortgage their road and franchises to secure such bonds."

It is to be hoped that the late opinion of the Chief Justice in the case of *Reiser* v. *The Saving Fund Association*, Lega Intel. of May 17, 1861, will remind the legislature that the

[Loudenschlager et al. *v.* Benton et al.]

construction of former acts of assembly is a judicial, and not a legislative function, and that no one department of the government has a right to dictate to another department in what manner its constitutional functions shall be executed. I am not at all inclined to construe the act of 1859, incorporating The Richmond and Schuylkill Passenger Railway Company, as authorizing them to issue a mortgage, because the legislature of 1860 declared that it should be so construed; but if I were, the construction prescribed is, that the company were authorized to mortgage "*their road and franchises,*" not their rolling stock and equipments. Unless, therefore, I fall back upon the plaintiffs' first postulate, that the equipments are an inseparable incident of the road, or the franchise, I should find in the act of 1860 no authority for a chattel mortgage, such as is set up. For the reasons already referred to, I cannot consider these chattels as such part of the company's road or franchise as to be within the purview of the act of 1860, or as to be necessarily exempt from levy and sale.

The question, then, whether, under the incorporating act of 1859, the company had power to make this mortgage, is to be decided as if the act of 1860 had not been passed. That such a mortgage would be a binding contract at common law—a good mortgage as between the company and the bondholders, may be admitted; but in Pennsylvania such mortgages of chattels, where the mortgagor is left in possession, are void as to the other creditors of the mortgagor. An act of assembly is necessary to give effect to such mortgages as against creditors claiming paramount to the mortgages. Was there legislative authority for this mortgage?

This question has embarrassed me not a little, and what is reported verbally to have been decided in the District Court, in the issue framed under the sheriff's interpleader act has not tended to relieve my embarrassment.

I have concluded not to decide the question at present. With a hundred thousand dollars of outstanding bonds in the hands of *bona fide* holders, many of whom are not represented in this proceeding, except as the trustees may be regarded as their representatives—with a hasty and imperfect argument on a motion for special injunction before the coming in of the answer to the plaintiffs' bill, I should feel that I was putting the rights of parties to unwarrantable peril by authoritatively deciding so grave a question on this preliminary hearing. Let it be reserved, therefore, for the final hearing.

But in order not to decide anything on the effect of the mortgage, I must assume it as an existing fact in the cause. It does establish a trust for the bondholders. It does cover all the personal property of the company. It is not material that

[Loudenschlager et al. *v.* Benton et al.]

some of that property was acquired subsequent to the mortgage, for equity will support a mortgage in respect to such property where the terms of the instrument are large enough to comprehend it. It is therefore a *de facto* mortgage of the goods levied in execution. So much I must assume, or else I am liable to prejudice the rights of parties beyond what I intend.

Assuming so much, can there be any doubt that equity will protect the property for the purposes of the trusts expressed in the mortgage? The reasoning of the late Justice McLean, and the authorities cited by him in the case of *Hoe* v. *Pennock & Hart*, reported in 6 Law Register, 27, and by Strong, J., in the case before the Supreme Court of New York, of *The Farmers' Loan and Trust Company* v. *Attaching Creditors of the Flushing Railway*, 10 Am. Railway Times, No. 10, fully answer this question in favor of the plaintiffs. Both these opinions and several other authorities will be found in a note to p. 590 of Redfield's Railways. See also *Pierce* v. *Emory*, 32 New Hamp. R. 484.

Without deciding that the mortgage in this case is null and void as to the execution creditors, I feel constrained at the suit of the trustees to support its trusts. Until that is decided, equity is bound to protect the parties claiming under the mortgage. I do not feel willing to pass upon the validity of the mortgage in the circumstances of the present hearing. It seems to result, therefore, as a necessary consequence, that the interposition asked for should be granted.

What adds very much to the equities of the plaintiffs, and presses with considerable weight upon my mind, is the fact charged in the bill and affidavits, and not controverted on the part of the defendants, that the company is totally insolvent and has made a general assignment for the benefit of creditors. The defendants are execution creditors of the company. As such they are subject to our statutes that regulate execution process against corporations. Now the act of 16th June, 1836, does in effect, though not very formally, classify all debtor corporations as either solvent or insolvent corporations. A solvent corporation is one whose estate is sufficient, an insolvent corporation is one whose estate is insufficient to pay its debts. A judgment creditor of a corporation sees it in possession of real and personal estate and carrying on business in its appointed sphere. The *prima facie* presumption is that its estate is sufficient to pay its debts, and he issues his execution, and the sheriff goes on to make the money in the manner prescribed in the 72d sec. of the act of 1836. If it is an improvement or transportation company, its canal or railroad, and whatever is an essential and indispensable incident of these, may not be seized, but all its personal and real pro-

perty, not so connected with its franchise, is leviable like any other debtor's personal or real property.

If, however, the execution be returned unsatisfied in whole or in part, then the 73d sec. institutes the process of sequestration. Such a return becomes the legal evidence of insolvency, and then the policy of the law is to substitute sequestration for all other execution process. Property that was liable to execution, but may not have been found by the sheriff, would not after that be liable to be seized in execution, but would pass to the sequestrator for the benefit of all the creditors.

Now the act of assembly is founded on the clear equity that all creditors have to share in the assets of an insolvent corporation. If its estate will not pay its debts, divide it, *pro rata*, among the creditors, for equality is equity. And when in a court of equity the insolvency of the company is shown, not indeed in the statutory mode, but in a manner quite as satisfactory, are we not to interpose and protect the property from the sacrifices of a sheriff's sale, and secure it in some manner to the use of all the creditors *pro rata?* We have no power to institute sequestration—that must be had in the court where the judgment is, but I suppose we might stay a sheriff's sale until a creditor could get such a return of his execution as would entitle him to demand sequestration in the appropriate court. Or where, as in this case, there is an apparent trust to be administered for the benefit of creditors, I suppose it is perfectly competent, nay, indispensably necessary for me to say that in view of the insolvency of the corporation its assets must, in some form, go to the benefit of all the creditors, instead of those few who happened to get their executions first into the sheriff's hands. Whether that end is to be attained through the trustees named in the mortgage, by placing the road with its equipments in their hands to be kept up and used for the benefit of the creditors, or whether the goods are to be permitted to pass to the assignee, or whether a court of equity would provide its own receiver, are questions that need not now be considered; but that, in one form or the other, the great principle should be carried into effect that all estates of an insolvent corporation should be administered for the benefit of all creditors, is, I think, too clear and just a conclusion to be questioned.

And here comes into view the public interests involved in the corporation. It must be presumed that the public have an interest in the maintenance of this transportation company, else it would never have been incorporated. But the public interests are not to be sacrificed because the company is insolvent. It was to prevent this sacrifice in just such a contingency that Judge Tilghman suggested the sequestration process

[Dennis *v.* Eckhardt.]

in 13 S. & R. 212. Sequestration is a form of equitable relief. It is now a statutory remedy which belongs to the court which renders the judgment, but the equity on which it is founded may, in other forms, be asserted in a court of equity. And it is a matter appropriate to be considered, that by doing equity to all creditors alike, we subserve the public interests, and possibly maintain for general use, a railway that was designed to be a public convenience. A sale by the sheriff of the horses and cars would deprive the public of all benefit from this road.

The defendants have a legal right to the fruits of their execution, and as between themselves the maxim is, "first come first served," but the trusts of the mortgage are a prior equity to any of their legal liens. They obtained their judgments with notice of the mortgage, and before their executions are returned the insolvency of the company appears. Out of these circumstances an equity arises which is prior and superior to their rights as execution creditors.

I will, therefore, direct a decree for a special injunction to be drawn, stipulating for security to each creditor who is named as a defendant in the bill, in an amount at least equal to his debt, interest and costs, and for a continuance of the lien of each *fi. fa.* until the further order of this court; but enjoining the said creditors and sheriff against proceeding to sell the goods levied on until the further order of this court, the securities given to be approved by Judge Read or the prothonotary, on reasonable notice.