ADMINISTRATOR CUM TESTAMENTO ANNÉXO OF JACOB DAVIES, deceased,

*v.*

ADMINISTRATOR OF MARY ANN STEELE, deceased, et al.

1. Prior to the statute of 1851, defining the meaning of the words "dying without issue," a bequest over to a second legatee, limited to take effect on the death of the primary legatee without issue, the words "dying without

Davies's Administrator v. Steele's Administrator.

issue" were to be construed as meaning an indefinite failure of issue, unless it appeared, from the face of the will, that they were used in a different sense.

2. A bequest of personal property, limited to take effect on an indefinite failure of issue of the first taker, is void for remoteness.

3. A will must be construed according to the law in force at the time it takes effect.

On final hearing on bill and answer and facts admitted.

*Mr. Willard P. Voorhees,* for the administrator of Mary Ann Steele, deceased.

*Mr. Hugh M. Gaston,* for the representatives of Ann Miles, deceased.

*Mr. John S. Voorhees,* for the representatives of Mary Batton, deceased.

Van Fleet, V. C.

The object of the bill, in this case, is to procure a decree settling the rights of several claimants, claiming in two distinct rights, to a legacy of $5,000. The legacy was given by the will of Jacob Davies. He died in 1834. His will was admitted to probate July 3d, 1834. The following are the parts of his will material to the question presented for decision. He first gives his widow " the interest accruing on $5,000, to be paid to her annually, or as the same may become due, during her natural life ; " he then gives her the use and occupation of a house and lot as long as she remains his widow, and devises the remainder in fee to his daughter Mary Ann ; he then gives his daughter Mary Ann the sum of $5,500, which sum, the will says—.

"Is to be placed out on interest, secured by bond and mortgage on real estate, and the interest accruing thereon to be paid annually to my daughter, during her natural life."

The testator then says :

"I do also give and bequeath to my said daughter, her heirs and assigns,

the additional sum of $5,000, left for my wife's use, after the decease of my wife."

Seven pecuniary legacies, of specific amounts, are then given, three of which are to the testator's brother and two sisters, $500 being given to each. Then, in a subsequent part of his will, the testator says:

"In case of the decease of my said daughter Mary Ann, without lawful issue, I do order and direct that the legacies herein bequeathed to her be equally divided between my brother and sisters, share and share alike."

This is the clause on which the dispute arises, and the question is, Whether, by the legal construction of the whole will, the bequest over to the brother and two sisters is limited to take effect on a definite or indefinite failure of issue.

It is undisputed that, if the bequest over is limited to take effect on a definite failure of issue, the limitation is valid, and the representatives of the brother and sisters of the testator are entitled to the legacy, but if, on the contrary, the brother and sisters can only take after an indefinite failure of issue, then, it is admitted, the limitation is void. There can be no doubt that, prior to the enactment of the statute of 1851 (*Rev. p. 1248 § 35*), it was perfectly well settled that a bequest over to a second legatee, limited to take effect in case the primary legatee should die without issue, standing alone, without anything to show that the words "dying without issue" were used otherwise than in their legal sense, was to be construed as a limitation founded on a general, indefinite failure of issue; in other words, that the testator meant that the bequest over should not take effect until the whole line of heirs of the primary legatee was extinct. *2 Jarm. on Wills (5th Am. ed.) \*497.* And it was also equally well settled, as a general rule, that when a gift of personal property was limited to take effect on an indefinite failure of issue, the gift over was void for remoteness, and the primary legatee took the subject of the gift absolutely, whether by the terms of the bequest he was given merely a life interest or the absolute property. *2 Rop. on Leg. 1522, 1527.* The principle was also well established

that a bequest of personal estate, expressed in words, which, in a, devise of land, would create an estate tail, would pass the property absolutely.

The testator's daughter Mary Ann married and had one child,. which died in infancy, in November, 1844. Mary Ann died herself, childless and intestate, in October, 1845. Her husband survived her. Administration has been granted on her estate. The testator's brother, Benjamin Davies, died childless in 1836.. One of the testator's sisters, Mary Batton, died intestate in the lifetime of the testator's daughter Mary Ann. Her husband and four children survived her. The testator's other sister, Ann Miles, died intestate in December, 1879, leaving two children.. The testator's widow died in March, 1880. The contest is be-- tween the administrator of the testator's daughter Mary Ann on. the one side, and the representatives of the testator's two sisters on the other. The administrator contends that the legacy to the brother and two sisters was limited to take effect on an indefinite failure of issue, and consequently that Mary Ann took it absolutely, while the other side claim that it was limited to take effect on a definite failure of issue, and vested, consequently, in their ancestors. The question must be decided by the law as it stood in 1834.

It cannot be denied that at the time the will took effect, the words " dying without issue," or any other equivalent expression,. had, according to judicial construction, a definite and certain meaning, and were, when standing alone and unexplained or unrestrained by other parts of the will, uniformly and inflexibly construed to mean an indefinite failure of issue. That must be the construction they receive here, unless some expression or other indication of intention can be found in this will, which furnishes satisfactory evidence that they were used in a different sense from that which the law then put upon them. Their legal meaning must prevail, unless it is clear, on the face of the will,. that they were used in a different sense, and the evidence that they were so used must amount to a fair demonstration. *Donn* v. *Penny, 19 Ves. 545.* The meaning which the law, prior to the statute, gave them was purely artificial, and the rule by which they were interpreted would seem to have been framed rather to

defeat than effectuate the intention of testators. But it was the law, and rights acquired by force of it, while it was the law, are just as inviolable as rights acquired by force of any other legal rule.

The cases dealing with the construction of such bequests and devises are too numerous to be reviewed or even cited in an opinion. It is enough to say that while the courts have been eager and astute in searching for grounds on which such limitations might be upheld, especially in cases where the thing limited over was personal estate, yet no case, so far as I am aware, has gone to the extreme point of declaring that the mere fact that the person to whom the legacy was limited was in existence at the date of the will and the senior in years of the primary legatee, was sufficient to withdraw the case from the general rule, and to warrant a construction that a definite and not an indefinite failure of issue was intended. And yet these are the only circumstances which can be urged as affording the slightest evidence in this case that a definite failure of issue was meant. It is true the ulterior legatees were related to the testator, and would, perhaps, be his kindred nearest in blood on the death of his daughter, but this is so in almost every case, and does not seem to have been regarded as possessing any force whatever as evidence of intention. The only case that has come under my observation in which either of the circumstances which distinguished this case is mentioned as furnishing evidence of intention is, *Roe* v. *Jeffery*, *7 T. R. 589.* Lord Kenyon, in delivering the opinion of the court in that case, said : " The question, therefore, in this and similar cases is whether, from the whole context of the will we can collect that, when an estate is given to A and his heirs forever, but if he die without issue, then over, the testator meant dying without issue living at the death of the first taker. * * * On looking through the whole of this will, we have no doubt but that the testator meant that the dying without issue was confined to a failure of issue at the death of the first taker, for the persons to whom it is given over *were then in existence, and life estates are only given to them.*" Now, although the fact that the ulterior legatees were in existence is here mentioned as a circum-

stance tending to show that a definite rather than an indefinite failure of issue was meant, yet, I think, it is entirely plain that in that particular case it was without the least significance in that regard.    The important and decisive circumstance in that case was, that the interest limited over could only endure during the life of the ulterior legatee.    Unless, therefore, it was held that a definite failure of issue was meant, it was not possible to bring the ulterior legatees within reach of the testator's bounty.    The duration of the interest given over, made it entirely clear that the failure of issue contemplated by the testator was one that must occur within the limits of a human life.

*Barlow* v. *Salter, 17 Ves. 479,* decided by Sir William Grant, master of the rolls, in 1810, is an authority very much in point. The testatrix gave her daughter Margeret all her estate, real and personal, of every sort and kind, to her and her heirs, and appointed Margaret her executrix.    The will then directed :

"In case Margaret dies without issue, all to be divided between my four nephews and nieces, Nathaniel, William, Catharine and Elizabeth; Catharine's part only for life, and her part to be divided between the survivors."

Margaret and the two nephews and two nieces survived the testatrix.    Her estate consisted of personalty only.    One of the nephews filed a bill to procure a declaration that, in case Margaret died without leaving issue of her body living at her death, the nephews and nieces would be entitled to the estate.    The master of the rolls, in deciding the case, remarked that it was settled that, unless there were expressions or circumstances from which it could be collected that the words " dies without issue " were used in a more confined sense, they must be construed according to their legal signification, viz., death without issue generally.    He held that there was no such expression or circumstance in the will, and that the limitation over to the nephews and nieces was void.    With regard to the life interest given to one of the ulterior legatees, he said :  " Where nothing but a life interest is given over, the failure of issue must necessarily be intended a failure within the compass of that life, but where the entire estate is given over, the mere circumstance that one taker

is confined to a life interest, furnishes no indication of an intention to make the whole bequest depend upon the existence of that person at the time when the event happens on which the limitation over is to take effect." Now, in that case, all the ulterior legatees were in existence when the will took effect, and all were of the blood of the testatrix, yet these circumstances were not regarded as furnishing the least evidence that a definite failure of issue was meant.

In cases where the words were if the primary legatee "dies leaving no child or children" (*Hull* v. *Eddy, 2 Gr. 169*); or "leaves no issue of his body" (*Forth* v. *Chapman, 1 P. Wms. 663; Crooke* v. *De Vandes, 9 Ves. 197*); or where the bequest or devise was to several, and if either should die without issue, his share should be divided equally among the survivors (*Blackwell* v. *Blackwell, 3 Gr. 386; Wardell* v. *Allaire, Spen. 6; Seddel* v. *Wills, Id. 223; Howell* v. *Howell, Id. 411*); or where the gift was to A., and if he should die without issue, then, after his decease—which was construed to mean immediately after his decease—to B (*Pinbury* v. *Elkin, 1 P. Wms. 563; Trotter* v. *Oswald, 1 Cox 317; 2 Jarm. on Wills. *523*), it has been held that the words of gift, themselves, sufficiently indicated that a definite failure of issue was intended to justify that construction. Now, in all these cases, it will be observed that there was some evidence in the words in which the bequest over was expressed, even if it cannot be considered very cogent, showing that a definite failure of issue was meant. For example, when a testator says, "I give my daughter Mary $1,000, and if she should die without issue, I want the thousand dollars to go, immediately after her death, to my brother Benjamin," there can be no doubt that a definite failure of issue was meant, for Benjamin is to take immediately after Mary's death, in case she dies without issue. But there is no such evidence in this case. There is nothing on the face of the will indicating an intention to restrain or control the technical meaning of the words "dying without issue." When that is the case, the authorities agree that those words must be read according to the meaning which the law has put upon them.

My conclusion is that it must be held, in conformity to the legal rule in force at the time this will took effect, that the gift over to the testator's brother and two sisters was limited to take effect on an indefinite failure of issue, and consequently that the primary legatee took the $5,000 absolutely, and that her administrator is now entitled to it. Counsel fees and costs will be allowed to all parties out of the fund.