## SCRIBNER *v.* CLARK *et al.*

### (*Circuit Court, N. D. Illinois.* April 9, 1888.)

1. COPYRIGHT—INFRINGEMENT—TITLE OF COMPLAINANT.

   In a suit for the infringement of a copyright, where it is shown that the copyright was taken in the name of the complaining publisher as "proprietor," defendant cannot object that the author was a married woman, and that her husband was entitled to the fruits of her literary labor; for it will be presumed that the legal title of the author was properly vested in complainant.

2. SAME.

   Complainant's title is sufficiently made out to enable him to maintain the suit where it is shown that he took the copyright in the name under which he did business, the name of a firm to all of whose rights he had succeeded on its dissolution.

3. SAME—MEASURE OF DAMAGES.

   Where the infringing publication uses only a part of the matter of the original, and is issued in a different and much cheaper form, the measure of damages is the amount of profits realized by the infringer, and not the amount of profits that would have been realized to the copyright owner by the sale of an equal number of copies of the copyright edition.

4. SAME—DECREE—FORFEITURE.

   Though the bill prays the forfeiture of all the infringing books, and the plates used in their production, it is unnecessary to grant any other relief than damages, where it is shown that the infringer's place of business, with all the books and plates in question, has been destroyed by fire.

In Equity. Bill by Charles Scribner against Belford Clark & Co. for infringement of copyright. Decree for complainant. Affirmed in 12 Sup. Ct. Rep. 734.

*W. C. Larned,* for complainant.

*Hutchinson & Partridge,* for defendants.

BLODGETT, District Judge. This is a bill in equity charging the defendants with infringement of a copyright owned by the complainant of a publication entitled, "Common Sense in the Household: a Manual of Practical Housekeeping. By Marian Harland." The case was referred to one of the masters of the court to take proofs and report findings upon the question of infringement, and he has reported that the defendants, by the publication and sale of two books set out and described in the bill of complaint, one under the title of "How to Cook," and the other under the title of "Economy Cookbook," have infringed upon the complainant's copyright by incorporating into their said publication something over 50 pages of the matter of complainant's book, as well as substantially following the arrangement of subjects and headings. *Myers* v. *Callaghan,* 10 Biss. 139, 5 Fed. Rep. 726. I have carefully examined the proof upon which the master bases his findings, and am satisfied that the finding was fully justified by the testimony. The case is now before me on defendants' exceptions to the master's findings, and on complainant's motion for a decree in pursuance of the master's report. It was objected at the hearing that the complainant could not recover in this case, because the proof shows that Mrs. Terhune, the author of this book, whose *nom de plume* is Marian Harland, was a married

woman at the time the copyright in question was taken, and that by the common law her husband is entitled to the benefits of her literary work, as well as any other proceeds of her industry during coverture. I do not think this point can avail the defendants, because the proof shows that the first edition of the work was copyrighted in the name of "Charles Scribner & Co., Proprietors;" and the second edition, which is the one now in controversy, was copyrighted in the name of "Charles Scribner's Sons, Proprietors;" and, as the proof shows that Mrs. Terhune settled from time to time with the owners of the copyright for her royalties, the court will presume that her legal title as the author of these books was in some due and proper manner conveyed to and vested in the persons who secured the copyright thereof. Acquiescence for so many years by all the parties in this claim of proprietorship in the copyright is, it seems to me, enough to answer this suggestion of Mr. Terhune's possible marital interest in his wife's earnings. It is certain that, if there is any ownership in this work by copyright at all, it is in the complainant, in whose name the copyright was taken and now stands, so far as is shown by the proof in this case. If the law of the domicile of Mrs. Terhune entitles her husband to any part of her earnings, that is a matter to be settled between her husband and the complainant, and which the defendants cannot interpose as a defense to a trespass upon the complainant's property rights in this copyrighted book.

It is further objected by the defendants that the complainant's title is not sufficiently made out to justify him in maintaining this suit, but this objection I do not think is sustained. The proof shows that the first edition was copyrighted in the name of "Charles Scribner & Co.," a firm of book publishers at that time well known in the United States. This firm was dissolved shortly after the first copyright was obtained by the death of Mr. Charles Scribner, the senior member, and the business assumed and carried on by "Scribner, Armstrong & Co." as successors to all the trade, business, and good will of Charles Scribner & Co., who continued the publication of this book, with other business, without question or interference. About 1878 this firm was dissolved, and was succeeded by the firm of "Charles Scribner's Sons," consisting of Charles Scribner, the present complainant, and John Blair Scribner, who succeeded to all the rights, property, interests, and good will of the firm of Scribner, Armstrong & Co. In January, 1879, the firm of Charles Scribner's Sons was dissolved by the death of John Blair Scribner, and the present complainant, by purchase of the interest of the deceased member, became the sole successor of the preceding firm, with the right to use the name thereof, and has continued to carry on the business under the name of "Charles Scribner's Sons." The second copyright was taken out in September, 1880, after the death of John Blair Scribner, and after the present complainant, under the name of "Charles Scribner's Sons," had succeeded to all the rights of the preceding firm; and this copyright was taken in the name of "Charles Scribner's Sons," under which name the complainant, Charles Scribner, was then doing business.

The infringement in question is charged upon the last edition; and, upon the facts shown in the record, there can be no doubt that an infringement of this copyright owned by the complainant in his business name is fully shown. In regard to this last edition, it can make no difference, so far as the defendants are concerned, how the complainant acquired the right to Mrs. Terhune's literary work. It is enough that the proof shows that he took the copyright of the second edition in the name under which he then conducted his business, and whether he has paid Mrs. Terhune any royalties or not is a matter of no concern to the defendants. The trespass charged in the bill, and established by the proof, is upon the property of the complainant, to which he has title by virtue of his copyright.

The only question left for consideration is the amount of damages to be awarded. The book covered by the complainant's copyright was written and prepared by Mrs. M. Virginia Terhune, an authoress well known in this country by her *nom de plume* of "Marian Harland." The first edition was published in 1871, and the copyright taken in the name of Charles Scribner & Co., under a contract between the firm and Mrs. Terhune that the firm should have the exclusive right of publishing the work for a term of seven years from the date of the copyright, and should pay the author the sum of 30 cents per copy as royalty on all books sold. A new edition of the work was prepared by Mrs. Terhune in 1880, which was duly copyrighted in the name of "Charles Scribner's Sons," as proprietors, on the 18th of September of that year. By agreement between complainant and Mrs. Terhune, the retail price of both editions of the book was to be $1.75 per volume, and the proof shows that the profits of the publishers were about 56 cents per copy, net. It is contended on the part of complainant that the rule of damages in this case should be the same as that adopted in *Pike* v. *Nicholas*, L. R. 5 Ch. App. 261, referred to in Drone, Copyright, p. 535. This rule is that the defendant is to account for every copy of his book sold as if it had been a copy of complainant's book, and to pay the complainant the profit which the latter would have received from the sale of so many additional copies. The proof in this case shows, and it is a conceded fact, that the infringing book published by the defendants was a cheap edition intended for popular sale at news stands, a small edition of a little over 9,000 copies having been sold at about 60 cents a copy, and a still cheaper edition having been put upon the market at 10 cents a copy, of which the defendant sold 60,671 copies. While the rule contended for as to the measure of damages may have been a proper one in the case of *Pike* v. *Nicholas*, it seems to me it is not the proper rule in this case, inasmuch as the defendants only used part of the material of the complainant's book, and as their edition was a much cheaper one, and their sales at a very much lower price. If the defendants had put their editions upon the market at the same price at which the complainant sold his books, the rule in *Pike* v. *Nicholas* might be adopted here; but it does not follow that if defendants had put upon the market such editions of their book as were published by the complainant they could, or would, have

sold over 70,000 copies. The fair and rational presumption from the facts is that is that it was the low price at which the defendants' books were offered in the market that caused these large sales. It seems to me the just and proper rule in this, as in all other cases of this character, is to ascertain the profits the defendants made by their piracy of the complainant's work, and fix that as the measure of the complainant's damages; and, as the only proof as to the amount of these profits comes from the defendants, this is the only proof to be considered on this question. The defendants' books of account have been produced before the master, and show that the profit on the sales of the two editions published by them, that is, the proceeds of the sales, less cost of production and selling, was $1,092.53; and this amount must therefore be taken as the measure of the complainant's damages in this case.

The bill contains the usual prayer for the forfeiture of all the books on hand, and of the plates, etc., used by the defendants in the production of the pirated work. About a year ago, and since the commencement of this suit, the place of business of the defendants was destroyed by fire, and it is conceded that all the books on hand, together with their stereotyped plates, engravings, etc., used in the publication of this work, were totally destroyed at that time, and that defendants have not reproduced these plates, or continued the publication of the work. This renders it unnecessary to grant any relief upon the prayer for forfeiture, and leaves the complainant entitled only to a decree for perpetual injunction against the further publication of the book, and for the amount of damages above stated, with the costs of this suit.