HERBERT ALMY, Administrator, *vs.* ANNA G. JONES *et als.*

Bequest of $25,000, for an "Art Institute" in the city of Providence; "when the citizens of Providence shall have contributed the funds necessary to found an institute worthy of the city for the promotion of art," then this sum to be permanently invested and the annual interest used for the benefit of the institute; meanwhile the income to be distributed in "annual prizes for the works produced during the year, in whatever department of the fine arts," by artists of Rhode Island.

*Held*, that the bequest was in all respects a lawful charity, and that objections to its validity on the score of indefiniteness or of remoteness were untenable.

Public Statutes R. I. cap. 182, § 14, providing that when any person having a devise or bequest shall die before the testator, leaving a lineal descendant, such descendant shall take the devise or bequest as such person would have done had he survived the testator, does not apply in favor of the descendant of a person who was dead at the date of the testator's will, such person having been one of a class to which a testamentary gift is made.

A. bequeathed the residue of his estate to the children of his sister and of his brother, that is, "to the children of the first generation." Two of these children had died before the date of the will, leaving issue who survived the testator.

*Held*, that the issue took nothing under the will.

BILL IN EQUITY for instructions.

This bill was preferred by the administrator with will annexed of the estate of Albert J. Jones, who died May 25, 1887, in Florence, Italy. The will was duly proved November 8, 1887, before the Probate Court of the city of Providence. The questions involved are stated in the opinion of the court.

*February* 24, 1891. DURFEE, C. J. This bill is brought by the administrator with will annexed of the will of the late Albert J. Jones for instruction in regard to the execution of the will in points involving its construction. The will bears date May 24, A. D. 1886. The first clause is as follows : —

"I give and bequeath the sum of twenty-five thousand ($25,000) dollars as a fund for an Art Institute in the city of Providence. When the citizens of Providence shall have contributed the funds necessary to found an institute worthy of the city for the promotion of art, then this sum, with accumulated interest, shall be permanently invested, to be called the 'Albert Jones Art Fund,' the annual interest only to be used for the benefit of the institute for all time."

The testator added a codicil to the will dated April 25, A. D. 1887. The first clause of the codicil is as follows : —

" I wish the income of the fund of twenty-five thousand dollars given for the encouragement of art, to become at once available after my death by its distribution in annual ·prizes for the best works produced during the year, in whatever department of the fine arts, by artists belonging to or residing in the State of Rhode Island."

The first question is, whether these clauses are valid. It is contended that the bequest in the first clause is void for indefiniteness, it being uncertain what is meant by an " Art Institute," owing to the indeterminateness of the word " art," and still more uncertain what is meant by an institute for the promotion of art " worthy of the city " of Providence. It is true the word " art " is sometimes used very broadly; as, for instance, when it is used in contradistinction to nature, or in the phrase " the arts of war and peace." But it is also used, especially when used without any qualifying adjective or phrase, to signify art in its higher manifestations, or art *par excellence*, as it is represented in works of art by those who are distinctively denominated artists. In this sense the word is used to designate the group of arts known as the fine arts, as distinguished from the useful, or mechanical and industrial arts. We think the word has this more distinctive meaning in the first clause of the will. The language of the codicil confirms this interpretation. The testator there, describing the twenty-five thousand dollars bequeathed in the first clause as " a fund given for the encouragement of art," declares that he wishes the income " to become at once available," evidently meaning that he wishes it to become available for the purpose for which the fund was given, namely, " the encouragement of art," and to that end directs its distribution in annual prizes for the best works " of the fine arts " produced during the year by Rhode Island artists. We think there can be no doubt that what is meant by an " Art Institute " is an institution or establishment resembling such as exist in Europe, for the promotion of the fine arts, of the arts whose aim is beauty rather than utility, though not necessarily to the exclusion of utility when the two can be combined. The objection to the phrase " worthy of the city " is, in our opinion, specious rather than sound. When a testator uses such a phrase, he knows of course that, as practically applied, it has different meanings for different

minds; but he also knows that the meaning is capable of determination by the court, aided by proper testimony, with sufficient accuracy for the purposes of his bequest, in case it is found necessary to apply to the court for such determination. We do not think the bequest is void for indefiniteness.

The second contention is, that the bequest is void for remoteness, because it may fail to go into final effect within the period allowed by the rule against perpetuities. A trust for charitable uses, which is to go into effect immediately, is not subject to the rule against perpetuities because designed to be perpetual; but if it is not to go into effect until after the period allowed by said rule, it has been said in a recent English case that it fails *ab initio*. *Chamberlayne* v. *Brockett*, L. R. 8 Ch. App. 206. A trust for charitable uses may depend for its going into effect upon a condition to be performed by others, which may or may not be performed within the period allowed. In such case the English courts do not at once disaffirm the trust, but allow a reasonable time for the condition to be performed, and if the condition be performed within such time, sustain the trust; if it be not and is not likely to be, either disaffirm the trust or apply it *cy pres*, if the terms in which it is declared permit, to other charitable purposes. Tyssen on Charitable Bequests, 423–427, and cases there cited. *Sinnett* v. *Herbert*, L. R. 7 Ch. App. 232. The American cases are not stricter certainly than the English on this point. *Inglis* v. *Trustees of the Sailor's Snug Harbor*, 3 Peters, 99; *Executors of McDonogh* v. *Murdoch et al.* 15 How. U. S. 367; *Ould* v. *Washington Hospital, etc.* 95 U. S. 303; *Russell* v. *Allen*, 107, U. S. 163. In the last named case, Mr. Justice Gray, citing the three cases next before mentioned, said, speaking for the Supreme Court of the United States, that they show that " a gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency that may possibly not happen within a life or lives in being and twenty-one years afterwards, is valid, provided there is no gift of the property meanwhile to or for the benefit of any private corporation or person." See, also, *Missouri Historical Society* v. *Academy of Sciences*, 94 Mo. 459; *Sanderson* v. *White*, 18 Pick. 328, 336; *Odell* v. *Odell*, 10 Allen, 1.

Under these authorities the bequest in the case at bar would not be instantly declared void, whatever eventually might become of it, even if it had remained as given in the will. It was modified by the codicil, and we must take it as modified. So taken it is a bequest of $25,000, to be held in trust as a permanent fund for an Art Institute in the city of Providence, whenever the funds necessary to establish such an institute worthy of the city shall have been contributed, the income or interest of the bequest meanwhile to be distributed by the trustees in prizes as directed. Or, to put it in another way, it is a bequest of $25,000 in trust for the trustees to use the income thereof for prizes as directed, until the funds for an Art Institute in the city of Providence, worthy of the city, have been contributed, then to be invested as a permanent fund for the institute, the annual interest to be used for its benefit for all time. Such a bequest is not, in our opinion, invalid to any extent, if it may be regarded as a bequest for purely charitable uses. " When personal estate," said Lord Selborne in *Sinnett* v. *Herbert, supra,* " is once effectually given to charity, it is taken entirely out of the scope of the law of remoteness." Property so given may be limited over from one charity to another on any event happening at any time. *The Society for the Propagation of the Gospel in Foreign Parts* v. *The Attorney General*, 3 Russ. 142 ; *Christ's Hospital* v. *Grainger*, 16 Sim. 83 ; 1 Mac. & Gord. 460 ; *Re Conington's Will*, 8 W. R. 444. In the first of these cases a testator in 1715 directed his executors, as soon as two Protestant bishops should be duly appointed and consecrated, one for the islands and the other for the continent of North America, to pay £1,000 to the plaintiff society to be applied equally to settling them in their sees, and meanwhile to invest the £1,000 and apply the income for the benefit of invalided missionaries of the society. A decree in 1717 ordered the £1,000 to be invested and the income to be applied as directed. In fact, a great part of the income was allowed to accumulate. The appointment of the bishops was completed in 1824, and then, at the suit of the plaintiff society, the whole sum was ordered to be paid to them. In the second case property was bequeathed in 1624 to the corporation of Reading on certain charitable trusts with a proviso that, if the corporation should neglect for a whole year to perform them, the

property should be transferred to the corporation of London for the benefit of Christ's Hospital. Two hundred years later, after the corporation of Reading had neglected for twenty years to perform the trusts, the property was allowed to go over to the second charity, on the ground that it was no more a perpetuity in one charity than in another. See, also, *Henshaw* v. *Atkinson*, 3 Madd. 306.

We do not think there can be any doubt that the bequest here, so far as given for the Art Institute, is a charity. *Trustees of the British Museum* v. *White*, 2 Sim. & Stu. 594; *Yates* v. *University College, London*, L. R. 8 Ch. App. 454; L. R. 7 H. L. 438; *Re Holburne, Coates* v. *Mackillop*, 53 Law Times Rep. 212; *Cresson's Appeal*, 30 Pa. St. 437. It is true the promotion of art is not specifically named as a charitable use in 43 Eliz. cap. 4, but that statute is regarded by the courts as rather illustrative than exhaustive in its enumeration of such uses, and, when resorted to for light, is interpreted in a large way, according to its spirit rather than its letter. Pomeroy Equity Juris. § 1029; *Pell* v. *Mercer*, 14 R. I. 412, 444. A nation's art is the flower of its civilization, and it is a matter of general interest that it should flourish and improve. To see and study some of the masterpieces of the fine arts and learn to appreciate their excellencies is itself an education that refines and enriches the mind. It follows that money for an institution that affords opportunity for this, while it at the same time gives encouragement to artistic production, is a public benefit.

But it is argued that, even if the final bequest of the principal sum is charitable, the intermediate bequest of the income is not, since it has no tendency to advance education or learning, and only provides a premium for proficiency in the production of articles of luxury; that in fact its purpose is private rather than public, and consequently that the entire bequest is invalidated by it. The argument does not convince us. The purpose of the prizes is not simply to give a little money every year to the successful artists, but also to arouse the ambition of Rhode Island artists everywhere and incite their best endeavors. This would be much, if it were all. It is not all. The competing works must be brought together for judgment, and, in the careful comparison of

work with work that will follow, the merits and faults of each will come to light, instructively for all concerned. Further, when such works are gathered they attract attention; people come to see and enjoy them; the competition among their authors provokes discussion and criticism; public sympathy is enlisted; public interest grows and spreads, and the minds of men more readily open for the reception of artistic truths and conceptions. Thus gradually an atmosphere is generated in which the fine arts can flourish; for it is a general law, that a fine art must find favor in the popular heart before it can reach perfection in the productions of the artists. Then, too, the prizes are more than money. They bring honor and distinction and assurance of appreciation, vastly more precious to the artists than the prizes themselves.

The efficiency of prizes as incentives to excellence is generally recognized, and it is common knowledge that numerous trusts for the distribution of prizes or premiums exist, whose validity has never been questioned. There are cases in which such trusts for proper purposes have been sustained. *Thompson* v. *Thompson,* 1 Coll. 381; *American Academy of Arts and Sciences* v. *Harvard College,* 12 Gray, 582. Our conclusion is, that the bequest here in question is in every respect a lawful charity.

The will of said Albert J. Jones has the following residuary clause: " The rest and residue of the property found standing in my name I bequeath to the children of my sister, Mrs. Emily A. Hall, and those of my deceased brother, John Davis Jones, to be equally divided among them." The codicil has the following: " The legacy to the children of my deceased brother, John D. Jones, and my sister, Emily A. Hall, is to the children of the first generation." At the date of the will Mrs. Hall had one child, a son, who still survives, and three grandchildren, children of a son previously deceased; John D. Jones had three children who survived the testator, and one grandchild, daughter of a son previously deceased. The grandchildren claim to be entitled to take under the residuary claim by virtue of Pub. Stat. R. I. cap. 182, § 14, as follows: —

" Whenever any child, grandchild, or other person having a devise or bequest of real or personal estate shall die before the testator, leaving a lineal descendant, such descendant shall take

the estate, real or personal, as devisee or legatee in the same way and manner as such devisee or legatee would have done in case he had survived the testator."

We do not think said provision is capable of a construction that will sustain the claim. It applies only where a person "having a devise or bequest" dies before the testator. The son of Mrs. Hall who was the father of her said grandchildren never had any devise or bequest under the will of Albert J. Jones, since he was dead, and so incapable of taking by devise or bequest, before the will was made. For anything that appears, the testator knew that he was dead when he made the will, and consequently could not even have intended to bequeath him anything. The same may be said of the son of John D. Jones, the father of John D. Jones's said grandchild. The purpose of the statute is obvious. At common law, when a legacy is given to a person who subsequently dies before the testator, it lapses, that is, it either falls into the residue, or, if it be residuary, becomes intestate. Under the statute, instead of lapsing, it goes to the legatee's descendants, on the assumption that the testator would rather have it go to them than have it lapse. 4 Kent Comment. *541, note b.

Our conclusion is, *first*, that the legacy of twenty-five thousand dollars is valid, and, *second*, that the three children of Mrs. Hall's deceased son and the daughter of John D. Jones's deceased son are not entitled to share in the residue.

*Joseph C. Ely*, for complainant.

*Clarence A. Aldrich*, Assistant Attorney General, *Amasa M. Eaton, Arnold Green, John C. Pegram, George Lewis Cooke, & William C. Baker*, for respondents.