### BLEISTEIN et al. v. DONALDSON LITHOGRAPHING CO.

(Circuit Court, D. Kentucky. December 13, 1899.)

COPYRIGHTS—SCOPE OF STATUTE—ENGRAVINGS.

    Engravings representing ballet dancers or fancy bicycle riding, designed for use as show bills, or advertisements of a circus, are not entitled to the privilege of copyright, either under the constitutional provision giving to congress power "to promote the progress of science and useful arts" by copyrights, or under Rev. St. § 4952, as amended by Act June 18, 1874, § 3 (18 Stat. 79), which provides that in the construction of such section the "words 'engraving,' 'cut,' and 'print' shall be applied only to pictorial illustrations or works connected with the fine arts," whether or not such provision be construed to require the "pictorial illustrations" to be connected with the fine arts.

This was an action to recover the penalty fixed by statute for infringement of certain copyrighted engravings. On motion by defendant for direction of a verdict.

Wilcox & Miner and C. J. & W. W. Helm, for plaintiffs.

E. W. Kittridge and Cobb & Howard, for defendant.

EVANS, District Judge. This is an action to recover $12,000 for the alleged infringement by the defendant of certain copyrights, being at the rate of $1 each for all the copies of the things copyrighted which were found in the possession of the defendant. The claim to this sum of money is based upon section 4965 of the Revised Statutes of the United States, which, as amended, reads as follows:

"Sec. 4965. If any person, after the recording of the title of any map, chart, dramatic or musical composition, print, cut, engraving, or photograph or chromo, or of the description of any painting, drawing, statue, statuary, or model or design intended to be perfected and executed as a work of fine arts, as provided by this act, shall, within the term limited, contrary to the provisions of this act, and without the consent of the proprietor of the copyright first obtained in writing, signed in presence of two or more witnesses, engrave, etch, work, copy, print, publish, dramatize, translate, or import, either in whole or in part, or by varying the main design, with intent to evade the law, or, knowing the same to be so printed, published, dramatized, translated, or imported, shall sell or expose to sale any copy of such map or other article, as

aforesaid, he shall forfeit to the proprietor all the plates on which the same shall be copied, and every sheet thereof, either copied or printed, and shall further forfeit one dollar for every sheet of the same found in his possession, either printing, printed, copied, published, imported, or exposed for sale: provided, however, that in case of any such infringement of the copyright of a photograph made from any object not a work of fine arts, the sum to be recovered in any action brought under the provisions of this section shall be not less than one hundred dollars, nor more than five thousand dollars; and provided, further, that in case of any such infringement of the copyright of a painting, drawing, statue, engraving, etching, print, or model or design for a work of the fine arts, or of a photograph of a work of the fine arts, the sum to be recovered in any action brought through the provisions of this section shall be not less than two hundred and fifty dollars, and not more than ten thousand dollars. One-half of all the foregoing penalties shall go to the proprietors of the copyright and the other half to the use of the United States."

The three subjects of copyright described in the plaintiffs' petition are: First, an engraving called "Spectacular Ballet Design," which is made up of a line of a dozen or more figures of females in ballet costumes of the most flashy style; second, an engraving called the "Stirk Family Design," which is a series of representations of fancy or trick bicycle riding; and, third, an engraving called the "Statuary Act Design," which is made up of pictures of certain statuary. Each of the engravings was designed and engraved at Buffalo, N. Y., and at least one of them by an employé of the plaintiff the Courier Company, and all were designed for use as show bills, and as advertisements for the Wallace Circus. The proof does not appear to warrant a claim (and which, indeed, is not made) that there was any infringement of a copyright of a photograph made from an object not of the fine arts, which would be a case that would limit the recovery to any sum between $100 and $5,000, as fixed in the proviso of the section just copied. The broad claim made in the plaintiffs' petition is that they are entitled to recover under the clauses of the section which fix the sum to which they are entitled at $1 per sheet. The court, however, is strongly inclined to the opinion that, if the plaintiffs are entitled to recover at all, the limits for such recovery are between $250 and $10,000, as fixed in the last clause of the section above copied, as, if there is any infringement, it may be of the copyright of a "print." In any event, there is raised a very important question, and one which, in this case, and in one which came before me at the last term, has received my most careful consideration. Clause 8 of section 8 of article 1 of the constitution of the United States, among other things, gives to congress power "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." In attempting to exercise that power, congress has made statutory provisions relating to the subject of copyrights. Among those provisions are sections 4952, 4956, 4957, 4962, and 4965 of the Revised Statutes. The first two of these, as amended, and so far as applicable to this case, read as follows:

"Sec. 4952. The author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such person shall, upon complying

98 F.—39

with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same. * * * In the construction of this act the words 'engraving,' 'cut,' and 'print,' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other articles of manufacture shall be entered under the copyright law, but may be registered in the patent office."

"Sec. 4956. No person shall be entitled to a copyright unless he shall, on or before the day of publication, in this or any foreign country, deliver at the office of the librarian of congress, or deposit in the mail within the United States, addressed to the librarian of congress, at Washington, District of Columbia, a printed copy of the title of the book, map, chart, dramatic or musical composition, engraving, cut, print, photograph, or chromo, or a description of the painting, drawing, statue, statuary, or a model or design, for a work of the fine arts, for which he desires a copyright; nor unless he shall also, not later than the day of the publication thereof, in this or any foreign country, deliver at the office of the librarian of congress, at Washington, District of Columbia, two copies of such copyright book, map, chart, dramatic or musical composition, engraving, chromo, cut, print, or photograph, or in case of a painting, drawing, statue, statuary, model, or design for a work of the fine arts, a photograph of the same: provided, that in the case of a book, photograph, chromo, or lithograph, the two copies of the same required to be delivered or deposited as above shall be printed from type set within the limits of the United States, or from plates made therefrom, or from negatives, or drawings on stone made within the limits of the United States, or from transfers made therefrom."

It will be seen that the prime question is whether the things copyrighted here are pictorial illustrations connected with the fine arts, or are such as are intended to be perfected as works of the fine arts. That this must necessarily be the question in this connection seems to be apparent from the language of that part of section 4952 in regard to the construction of the words "engraving," "cut," and "print," as used in the statute. The statute provides that those words "shall be applied only to pictorial illustrations or works connected with the fine arts." If the words "pictorial illustrations" are to be taken independently of the words which follow, then it must be determined whether the things copyrighted here, or any of them, are "pictorial illustrations," within the intent of the legislation. I think that no one of them is. On the contrary, I think that congress meant by those words a pictorial representation placed in a book or other publication to elucidate the text. In defining the word "illustration" the Century Dictionary uses substantially that language. If, however, disregarding this view, we are to construe the words "pictorial illustrations" in connection with the words "or works connected with the fine arts," then the plaintiffs' claim has quite as little support, inasmuch as works which are connected with a "cut" or "engraving" or "print" must necessarily be "pictorial illustrations" in a certain sense. If all parts of the language are to be construed as having reference to the fine arts, then, in order to bring out the real meaning, we may disregard the words "or works," and correctly read the clause as though it read that in construing the words "engraving," "cut," and "print" they shall be held to apply only to "pictorial illustrations connected with the fine arts." But, whether this is correct or not, the things copyrighted in this case, in my judgment, are neither "pictorial illustrations" nor "works connected with the fine arts," within the meaning

of the law. That there is a distinction between the useful arts and the fine arts is a fact which we must assume to exist, not only as matter of common knowledge, but from cases like Almy v. Jones, 17 R. I. 266, 21 Atl. 616, 12 L. R. A. 414, and from the definitions found in the dictionaries. For example, the fine arts are defined to be "those which seek expression through beautiful modes." It may be altogether undesirable to undertake to fix or describe in any set phrase the line of difference between the two. It may, indeed, be quite as difficult as it is undesirable to do so; but that there is a difference will be assumed by the court.

Inasmuch as the constitutional provision above referred to only authorizes congress to promote the "useful arts," the curious might moot the question of the power to promote any but the useful arts, and consequently the lack of power to legislate to give exclusive privileges respecting the fine arts, unless in cases where they are also useful arts; but the court is limited to a consideration of the intention of congress in the legislation regarding the fine arts which is thought to authorize this action, and the recovery of the enormous penalties demanded for the printing of the cheap show bills upon which the claim is based. The court, in considering this case, is limited to that, because, in its judgment, that is the only question to be decided on the pending motion, though it involves, of course, the question of the validity of each of the copyrights mentioned. If the things copyrighted in this case do not come within the statute, there is no occasion to go further. That the pictures offered in evidence in this case are such as are connected with the fine arts, I do not for a moment agree, nor does the evidence leave any question upon the subject which the court thinks it necessary to submit to the jury. That the picture which represents a dozen or more figures of women in tights, with bare arms, and with much of the shoulders displayed, and by means of which it is designed to lure men to a circus, is in any sense a work of the fine arts, or a pictorial illustration in the sense of the statute, I do not believe. The court does not think that it was in any wise intended by congress that such a picture should be the subject of the exclusive advantages given by the privilege of copyrighting. Instead of being either useful art or fine art, it is something to be regarded as merely frivolous, and to some extent immoral in tendency, though the court by no means intends to intimate that the nude is not perfectly admissible in the fine arts. The same conclusion, but upon somewhat different reasons, might apply to the picture called the "Stirk Family Design," which, as we have seen, is only an illustration of trick or fancy bicycle riding. As to the other picture, that known as the "Statuary Act Design," the same conclusions might generally be applied, but the proof appears to be that the copyright of this one is void upon another ground, viz. that it was printed, and a number of copies of it shipped to the circus agent as many as four days before the copies were either mailed or delivered to the librarian of congress in compliance with the provisions of section 4956, and, instead of being entitled to recover as to this particular picture, the plaintiffs, having, before it was granted, marked

upon it a statement that it was copyrighted, may have brought themselves within the penalty for that offense provided in section 4963. And, if the court were to submit the case to the jury at all, it would also be its duty to comment upon that portion of the evidence of the plaintiffs which seemed to indicate a possible publication of the two other pictures before the time of application for the copyright. The court, indeed, might have grave doubts whether the Courier Lithographing Company, which is a mere trade-name of a certain department of the business of the unincorporated association known under the laws of New York as the Courier Company, is or can be the author, inventor, designer, or proprietor of any of the things copyrighted, within the meaning of section 4952. The Courier Lithographing Company is a legal nonentity; that is to say, it is not a natural or legal person with any power to be a proprietor. It is certainly not the author, inventor, or designer of the things copyrighted, and how it, under the circumstances, can be the proprietor of it, is not clear to the court. Nor has any title in it been shown, unless it be that a title would result from the fact that a designer in the employ of the Courier Company designed one, or possibly two, of the pictures, though plaintiffs do not make it at all clear who designed any but the statuary act design. Certainly it is not made clear that they, or any employé of theirs, designed either of the others. .

Of course, the librarian of congress does not inquire into the matter of right when granting a copyright. He only states who claims the title, and leaves the courts to pass upon its validity. And, notwithstanding the cases of Colliery Engine Co. v. United Correspondence Schools Co. (C. C.) 94 Fed. 153, and Werckmeister v. Pierce & Bushnell Mfg. Co. (C. C.) 63 Fed. 445, and Scribner v. Clark (C. C.) 50 Fed. 473, and Lawrence v. Dana, 15 Fed. Cas. 26, and Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, which discuss a general proposition, I would be in much doubt about the right of the Courier Lithographing Company to two of these copyrights, in view of the evident design of the constitutional and statutory provision to which I have referred to give the inventor or author the exclusive right, although, if the six other plaintiffs had obtained the copyrights in their own individual names, or in that of the unincorporated association recognized by the laws of New York, it might be that the court should not hold that the actual inventor might not have previously transferred his rights by acts in pais, or by such as should be construed to be an equitable assignment of those rights. The trouble in this case is that there was never any sort of transfer, equitable or otherwise, to the Courier Lithographing Company, and that no right, therefore, existed in that unreal concern. It had no legal right to own or be the proprietor of anything. These remarks do not apply to the statuary act design, because in that case the copyright was granted to the Courier Company. However, the court does not feel called upon to pass definitely upon this question, as, in its opinion, the case must turn upon the others, and especially upon the general proposition that the things copyrighted in this case were by no

means such as either the constitution or the legislation of congress intended to protect by the privilege of copyrights. The court cannot bring its mind to yield to the conclusion that such tawdry pictures as these were ever meant to be given the enormous protection of not only the exclusive right to print them, but the additional protection of a penalty of a dollar each for reprints from them. As previously stated, they are neither "pictorial illustrations" nor "works connected with the fine arts," within the meaning of section 4952. Not being so, there was no authority to grant the copyrights, whether the constitution authorizes congress to promote the fine arts or not. The judgment of the court is that the plaintiffs, on their own showing, are not entitled to recover, and for that reason the motion of defendant will be granted, and I will instruct the jury to find a verdict for it.