LEON HAMPTON

*v.*

OMAR H. NEWKIRK et al.

[Decided October 31st, 1921.]

1. A separate paragraph of a will limiting an estate devised in event of the devisee's death without issue was effective not only as to the gift in the last preceding paragraph, but extended to a devise in an earlier paragraph.

2. Where a testator, after giving a house to his son and his residence and household goods to his daughter, by a separate paragraph gave one-half the residue and remainder to his son in fee-simple and the other half to the daughter for life, and at her death to the son in fee-simple, and provided in the following paragraph that "should my son die without leaving lawful issue, then bequests and devises in his favor should go to", others, the limitation applied to the several gifts to the son, including the remainder in the event of his death at any time though after the death of the testator and the life tenant.

3. One paragraph of a will devising property to the testator's son without words of inheritance, though within the statute of wills (*4 Comp. Stat. p. 5873 § 36*), was not inconsistent with the creation of a determinable fee by a later paragraph of the will.

4. A devise to the testator's son with a limitation over should the son die without leaving lawful issue was not invalid as a limitation over on an indefinite failure of issue, as the common law rule that the words "without issue" impart an indefinite failure of issue has been changed by *4 Comp. Stat. p. 5870 § 27.*

---

On final hearing on bill for construction of will.

The bill which has been filed herein is for the construction of the will of John Hampton, deceased. All parties in interest have been made defendants and have joined in the prayer of the bill for a construction of the will.

The material provisions of the will are as follows:

"*Fourth.*—I give and bequeath unto my son Leon Hampton, the Stokes House and lot situated on Broad street Woodbury, N. J., north of the Presbyterian church.

"*Fifth.*—I give and bequeath unto my daughter Emma M. Hampton. the House where I, live which is a double dwelling situated on the northerly side of high street in the city of Woodbury, and all of my house hold Goods that I, may die possessed off.

"*Sixth.*—Of all the rest residue and remainder of my estate. real and personal, I, give bequeath and devise the one equal undivided half part unto my son Leon Hampton in fee simple, and the other one equal undivided half part unto my daughter Emma M. Hampton for and during her natural life and at her death to my son Leon Hampton in fee simple.

"*Seventh.*—Should my son Leon Hampton die without leaving lawful issue, then the bequests and devises herein made in his favour shall go to the children of my sister Eliza Newkirk. viz.: Anna E. Elwell, Omar H. Newkirk. Adaline Fortiner. Elton J. Newkirk and Euphemia Newkirk. and my Grandson Burtsell, per capita in equal shares."

Leon Hampton, Emma M. Hampton and the several persons named in the seventh paragraph of the will survived testator.

It is contended on behalf of Leon Hampton, complainant herein, that the provisions of the will above quoted vested in him at the death of testator an indefeasible estate in fee-simple in the Stokes House, referred to in the fourth paragraph of the will, and also bestowed upon him a like estate in the undivided half of the residue of testator's property, real and personal, referred to in the sixth paragraph of the will, and also an indefeasible vested remainder in the other undivided half of the residue referred to in that paragraph.

*Mr. Austin H. Swackhamer,* for the complainant.

*Mr. Joseph J. Summerill,* for the defendants.

LEAMING, V. C.

Complainant first contends that the provisions of the seventh paragraph relate only to the residuary estate referred to in the preceding paragraph, and have no reference to the Stokes property referred to in the fourth paragraph. This contention cannot be sustained. The seventh paragraph of the will stands alone as an independent provision of the will and is given an independent number segregating it from the preceding paragraph; nor is there anything found in any part of the will to justify a conclusion of intent upon the part of testator to limit the operations of the provisions of the seventh paragraph in the manner suggested by complainant.

Complainant further contends that the contingency of death of complainant without leaving lawful issue, referred to in the seventh paragraph of the will, must be understood to refer to the event of his death without lawful issue before the death of testator. In this contention complainant relies upon *Burdge* v. *Walling, 45 N. J. Eq. 10,* which case may be said to give support to that contention. But *Burdge* v. *Walling* cannot be regarded as a controlling authority to that effect. The more logical and the accepted view in this state at this time is that where land is devised to a person in fee and a subsequent clause in the will limits such land over to a designated person or persons in case of the death of the first taker *without issue,* and there is no other

event expressed in the will to which the limitation over can be fairly referred, the event of death without issue will be understood to refer to the death of the first taker at any time, and not to his death before the death of testator, and in such devise the first taker enjoys at the death of testator a vested fee which becomes divested at his death without issue and vests in the person or persons *in esse* to whom the estate is thus limited over. *Patterson* v. *Madden, 54 N. J. Eq. 714; Rogers* v. *Bailey, 76 N. J. Eq. 29;* affirmed on opinion below, *78 N. J. Eq. 589; Ripley* v. *Freeholders, 40 N. J. Law 45.* The difference between a gift over in case of the death of the first taker and a gift over in case of the death of the first taker without issue is apparent; the logic of the essential difference is tersely expressed in *Rogers* v. *Bailey, supra,* at *p. 32* of the opinion.

The English judges have given extended consideration to cases of this class and have defined certain canons of construction to be applied. The leading case prior to a review by the house of lords was *Edwards* v. *Edwards, 15 Beav. 357.* Four classes of cases are there defined—first, a gift to A, and if he shall die, then to B. This imports a gift over only in case A dies before testator. Second, a gift to A, and if he shall die without leaving a child, then to B. This imports a gift over in the event of the death of A, without leaving a child, at any time. The third and fourth classes are in cases where the gift to A is preceded by a life estate, or some other interest of partial duration, thus: Third, a gift to one for life and after his decease to A, and if A shall die, then to B. This imports the same as the first case in all respects except as to the period of enjoyment; the period of enjoyment in the first class being the death of testator, that in the third class the death of the life tenant; hence, if A dies before the death of the life tenant the gift goes to B. Fourth, a gift to one for life, and after his decease to A, and if A shall die without leaving a child, then to B. This was considered of doubtful import, but was held, like rule No. 3, to refer to death before distribution. In 1874 these rules of construction came under review by the house of lords in *O'Mahoney* v. *Burdett, L. R., 7 Eng. & Ir. App. Cas. 388.* There rules 1 and 2, and apparently rule 3, were approved. Rule 4 was disapproved,

and it was there held that the fourth rule should have followed the second rule and imported death of A without issue at any time, unless from the provisions of the will there could be said to be conferred upon A a power of disposition, in which case the title of A would be regarded as indefeasible from his time of enjoyment. It may be here noted that the effect of the latter circumstance is in entire harmony with *Patterson* v. *Madden, supra.* Since *O'Mahoney* v. *Burdett,* the principles defined in *Edwards* v. *Edwards,* as modified, have been uniformly adhered to in England as settled canons of construction in cases of the classes there considered.

The present case presents, as to the Stokes property referred to in the fourth paragraph of the will under consideration, the situation defined in the second canon of construction in *Edwards* v. *Edwards, supra,* and that presented in *Rogers* v. *Bailey, supra,* that is, a gift to one with gift over in the event of his death without issue. This imports death at any time without issue. As to one undivided one-half of the property referred to in the sixth paragraph of the will the same situation and import clearly obtains. As to the other undivided half of the property referred to in the sixth paragraph of the will, complainant is given the fee subject to a life estate, with a gift over in the event of death without issue. This gift over must in like manner be said to stand in opposition to the devise to complainant, and to import the death of complainant without issue at any time and not merely prior to the death of the life tenant. It is not conceivable that the testator could have intended to limit over the fee in the property referred to in the fourth paragraph and in an undivided one-half of the property referred to in the sixth paragraph in the event of the death of complainant without issue at any time, and also to have intended to limit over the fee to the other undivided one-half of the property referred to in the sixth paragraph only in the event of the death of complainant without issue prior to the expiration of the life estate. Furthermore, no clause of the will, either expressly or by implication, confers upon complainant a power of disposal at the death of the life tenant, as did the will in *Patterson* v. *Madden, supra,* and in *Wilson* v. *Wilson, 46 N. J. Eq. 322,* hence, it is clearly impos-

sible to either seize upon a power of alienation at the termination of the life estate as inconsistent with the existence of a defeasible fee after that time, or to regard the gift over as standing in opposition and referable to the termination of the life estate, and thus invoke the second rule defined in *Patterson* v. *Madden*, or the like exception to the fourth canon in *O'Mahoney* v. *Burdett, supra.* See *Chetwood* v. *Chetwood, 81 N. J. Eq. 296.*

It is necessary next to inquire whether any provisions of the will here in question can be said to be in any way inconsistent with the creation of a fee in complainant determinable at his death at any time without issue.

It will be noted that the devise of the Stokes property in the fourth paragraph of the will is without words of inheritance. It is suggested that section 26 of our statute of wills, which section removes the necessity of words of inheritance to create a fee (*4 Comp. Stat. p. 5873*), is inapplicable because of the "further devise" contained in the seventh paragraph of the will. *Den* v. *Allaire, 20 N. J. Law 6; Den* v. *Snitcher, 14 N. J. Law 53,* and *Rogers* v. *Bailey, 76 N. J. Eq. 299; affirmed, 78 N. J. Eq. 589,* appear to adequately dispose of that contention.

Again, the limitation over is upon the death of complainant without issue, and not upon his death childless. It is well recognized that there can be no limitation over upon an indefinite failure of issue, and also that the words "without issue" import an indefinite failure of issue. See *Den* v. *Allaire, supra.* But the act of 1851 (*4 Comp. Stat. p. 5870 § 27*) has changed the common law rule touching the meaning of the words "die without issue." By that act the words "die without issue" must now be understood to mean a "want of issue in the lifetime or at the death of such person, and not an indefinite failure of issue, unless a contrary intention shall otherwise appear by the will." Accordingly, the failure of issue referred to in the present will must be regarded as a definite failure of issue and the limitation over by way of executory devise is wholly unassailable. Decisions under wills antedating that act are inapplicable. *Patterson* v. *Madden, supra.*

A decree will be advised in accordance with the views herein expressed.