HOWARD B. HEALD, Executor, Appellee, v. R. E. JOHNSON,
Treasurer of State, Appellant.

TAXATION: Inheritance Tax—Exemptions—Public Charities. A trust
for the purpose of aiding young men and women of the Protestant
faith in obtaining an education in the colleges or universities of
this state is a *public* charity, within the meaning of the statute which
exempts such charities from an inheritance tax.

Headnote 1: 11 C. J. pp. 317, 318; 37 Cyc. p. 1573.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER,
Judge.

DECEMBER 13, 1927.

Action for a refund of $5,000 which was paid to the state
as inheritance tax on certain bequests. The district court held
with plaintiff, and defendant appeals.—*Affirmed.*

*John Fletcher,* Attorney-general, *Herbert A. Huff,* Assist-
ant Attorney-general, and *F. E. Northrop,* County Attorney,
for appellant.

*Tinley, Mitchell, Ross & Mitchell,* for appellee.

ALBERT, J.—The disputation herein arises out of the fol-
lowing facts:

Alice L. Graham died testate on the 13th day of February,
1924, in Fulton County, Illinois. Her will was duly admitted
to probate in that county, and later, as a foreign will, in Potta-
wattamie County, Iowa. She was the owner of large tracts
of land in Pottawattamie and Cass Counties, but, so far as we
are concerned, the seventeenth paragraph of her will is the one
which gives rise to the questions involved herein. It reads as
follows:

"In consideration of the fact that my deceased sister, Car-
oline J. Graham, and myself, have for many years past owned
lands in Pottawattamie and Cass Counties in the state of Iowa,
and said lands are to be sold as hereinafter provided and being

desirous of setting apart a fund for the purpose of education of the young men and women of said counties respectively,

"I give and bequeath to the First National Bank (trust department) of Council Bluffs, Iowa, trustee, the sum of $25,000 out of the funds derived from the sale of lands in Pottawattamie County to be known as the John G. and Lydia Graham Scholarship. In trust, however, to be by said trustee safely invested and the income therefrom used for the purpose of defraying the expenses of some one or more young men or women while attending some college or university in the state of Iowa. And I further give and bequeath to the First National Bank (trust department) of Council Bluffs, Iowa, trustee, a further sum of $25,000 out of the funds derived from the sale of said lands in Pottawattamie County to be known as the John W. Graham Scholarship. In trust, however, to be by said trustee safely invested and the income therefrom used for the purpose of defraying the expenses of some one or more young men or women while attending some college or university in the state of Iowa.

"And for the purpose of determining the young men or women who shall have the benefit of said two last mentioned scholarships, I hereby authorize and empower the said trustee to arrange with the proper school authorities as said trustee may deem advisable in said county of Pottawattamie in the state of Iowa, for a competitive examination, upon such subjects as such school authorities and the said trustee shall agree upon; said examination to be open to all Protestant young men or women, graduates of any high school in said county within two years immediately preceding such examination who are of good moral character. The young man or woman obtaining the highest general average in such examination shall have the benefit of these provisions of my will and said income from said trust fund shall be expended by the said trustee toward paying the tuition, board, lodging, traveling expenses and other necessary expenses of such applicants while attending some college or university in said state of Iowa, to be agreed upon between the successful applicants and the said trustee, so long as such applicants shall faithfully obey the rules and regulations in force at such institutions and shall satisfactorily do the work

prescribed for students in such college or university or until his or her graduation.

"Whenever the person selected as a beneficiary for either of the scholarships above provided for shall finish the course of study in such college or university, or shall forfeit his or her right to the benefits of this provision by reason of misconduct, violation of the rules or regulations of the college or universities, or shall fail to satisfactorily do the work prescribed for students in said institution, or for any reason whatever, then there shall be held another competitive examination, in the same manner as in this clause hereinbefore described for the purpose of selecting another young man or woman as such beneficiary of this provision, which said examination shall be open to persons having the same qualifications as hereinbefore mentioned."

There are two other sections, providing two scholarships out of the proceeds of land sold in Cass County, of $25,000 each, naming the same trustee, and making the same provisions as to the beneficiaries, their education, etc., as to the first two scholarships above provided.

The executor of Alice L. Graham's estate, being called upon to pay the inheritance tax thereon, on the 8th day of October, 1925, paid to the state treasurer the sum of $14,574.31, which was 5 per cent on the full appraisal value of all of the land situated in Pottawattamie and Cass Counties. This, of necessity, made payment of 5 per cent on the four trusts of $25,000 each, above referred to; and it is to recover this $5,000 that this action was brought.

At the time of the death of Alice L. Graham, the statute in force covering the question involved read as follows:

"The tax imposed by this act shall not be collected: * * *

"(b) When the property passes to societies or institutions within this state incorporated for educational or religious purposes, or to cemetery associations or societies within this state organized for purposes of public charity, including humane societies."

The above is a part of Section 3, Chapter 38, of the Acts of the Thirty-ninth General Assembly, which appears later as Section 7308, Code of 1924.

If the case were to be ruled under this section, it is apparent that these bequests did not come within the exceptions

provided by the statute. However, Chapter 150 of the Acts of the Forty-first General Assembly in part reads as follows:

"(3) When the property passes in any manner for purposes of public charity, or for fraternal charitable institutions not maintained or operated for pecuniary profit including property which has heretofore so passed and upon which said tax has not been paid."

This latter law went into effect by publication on the 19th day of March, 1925, and, as heretofore said, this tax was not paid until October of that year. It therefore was "property which has heretofore so passed and upon which said tax has not been paid," within the provisions of the last above quoted statute. If it be found that it is the kind of property designated in said sections, then it was not subject to this 5 per cent tax, because of the exemption last above set out.

It was the finding of the lower court and the contention of the appellee here, that this property passed for the purpose of public charity, and therefore was within the provisions of the exemption provided in the last statute above quoted, especially that part which says: "When the property passes in any manner for purposes of public charity," etc. To this question we will now give our attention.

The term "charity," while not susceptible of a complete definition, is a term of much wider significance when used in law than in common speech. In the case of *Union Pac. R. Co. v. Artist,* 9 C. C. A. 14 (60 Fed. 365), Judge Sanborn, quoting from *Jackson v. Phillips,* 14 Allen (Mass.) 539, 556, says:

"'A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.'"

A shorter definition, possibly, is that given by Lord Camden, as follows:

"'A gift to a general public use, which extends to the poor, as well as the rich.'" 5 Ruling Case Law 292.

Generally speaking, gifts for schools and educational pur-

poses have always been looked upon and favored by the courts and have always been sustained, as charitable gifts. 11 Corpus Juris 316. That it may be limited or restricted to a particular purpose or use is also settled. *Dexter v. Harvard College*, 176 Mass. 192 (57 N. E. 371); *Farmers' L. & Tr. Co. v. Ferris*, 67 App. Div. 1 (73 N. Y. Supp. 475); *State v. Toledo*, 13-23 Ohio Cir. Ct. (O. S.) 327. A gift of this character providing for school books has been sustained. *Higginson v. Turner*, 171 Mass. 586 (51 N. E. 172). That the education provided for need not be a general education, but may be special or specific, was decided in *In re Will of Robinson*, 203 N. Y. 380 (96 N. E. 925). Or it may be one for the education of young persons in domestic and useful arts. *Webster v. Morris*, 66 Wis. 366 (28 N. W. 353); *Almy v. Jones*, 17 R. I. 265 (21 Atl. 616); *Cresson's Appeal*, 30 Pa. St. 437. A gift for the purpose of providing manual training or training in the trades is valid. *Richards v. Wilson*, 185 Ind. 335 (112 N. E. 780). One for the promotion of science, learning, and useful knowledge by other means than schools or colleges, or for the direct instruction of people or students, is equally a public charity. *Drury v. Inhabitants of Natick*, 10 Allen (Mass.) 169; *Sargent v. Cornish*, 54 N. H. 18. A bequest of a fund for giving of prizes and medals for educational or literary work is a valid charitable gift. *Coleman v. O'Leary's Exr.*, 114 Ky. 388 (70 S. W. 1068); *Bartlett, Petitioner*, 163 Mass. 509 (40 N. E. 899); *Palmer v. Union Bank*, 17 R. I. 627 (24 Atl. 109). In 11 Corpus Juris 316 to 320, is gathered a wealth of authority on this proposition.

Under these authorities, there can be no question that the purpose of these bequests in the instant will was charitable. The question left is whether or not the same is a "public" charity.

The word "public," when used in connection with charity, refers to the purpose and intent of the trust, as being for the benefit of the public in general, or for some object so general and indefinite in its character as to be deemed a common benefit, —and not to the method of its execution. A gift is a "public" charity when there is a benefit to be conferred upon the public at large, or some portion thereof, or upon an indefinite class of persons. Such gift need not be open to everyone in the community, however. By the designation of a class in a community

a charity becomes public. 5 Ruling Case. Law 293. It is there further said, in discussing this question:

"Even if its benefits are confined to specified classes * * * of a particular town, it is well settled that it is a public charity [citing *Burbank v. Burbank,* 152 Mass. 254 (25 N. E. 427)]."

The cry has come down to us through the years, from the foundation of our government, that "we must educate, or we must perish." Everyone recognizes the wisdom of this call, and anything by way of gift of this kind that aids in educating any portion of our citizens is a public benefit. We conclude, there-fore, that the bequest provided for in this will was rightly held by the district court to be a "public" charity, within the mean-ing of the exemption statute above quoted.

Refunds of this kind are provided for in Section 7396, Code of 1924.

The ruling of the district court was right.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.