The complainants, Lawrence Preston Redmond, Dorothy Redmond Hubbard and Gertrude Redmond McCain, are the great-great-grandchildren and the only living descendants of Captain James Lawrence. Their suit is one which has not been inaptly described as "equitable replevin." Complainants *Page 58 
pray that the defendant be decreed to surrender and deliver up, in specie, the portrait by Gilbert Stuart of Captain James Lawrence.
Captain James Lawrence, an American naval officer in the War of 1812 and the author of the famous order "Don't give up the ship," was a native of New Jersey.
Mary Lawrence Redmond, the only surviving grandchild of the captain, was the possessor of the portrait at the time of her death. She died in Rhode Island in 1887 and her will was probated in that state on December 12th, 1887. The property which she left and which is the subject of this proceeding is personalty and its disposition under her will is, therefore, governed by the law of Rhode Island. Jenkins v. Guarantee Trust and Safe Deposit Co.,53 N.J. Eq. 194; 32 Atl. Rep. 208; Farnum v. PennsylvaniaCompany for Insurance on Lives, c., 87 N.J. Eq. 108;99 Atl. Rep. 145; affirmed, 87 N.J. Eq. 652; 101 Atl. Rep. 1053.
However, the law of a sister state at a given time is a question of fact which must be ascertained by competent proof. CoralGables, Inc., v. Kretschmer, 116 N.J. Law 580;184 Atl. Rep. 825; McClellan v. F.A. North Co., 118 N.J. Law 168;191 Atl. Rep. 753. Since no evidence has been offered by either side with respect to the Rhode Island law to be applied, it is presumed that common law principles as they exist in New Jersey prevail also in that state. In this connection, R.S. 2:98-18 permits the courts of this state to take judicial notice of reports of judicial decisions of other states as evidence of the common law of such states. This statute is not mandatory but in any event the decree in this case is not changed by the application of Rhode Island law.
The testatrix bequeathed the whole of her property of every kind
"unto my son William Preston Redmond and his heirs: provided always, that the gifts and directions expressed in a memorandum heretofore made by me and now attached hereto shall be faithfully carried out and performed by my Executors: and also that if my said son shall die leaving no descendants the `Prize Silver' shall go and is hereby bequeathed to the next of kin of Lawrence blood, and the portrait by Stuart shall go and is hereby bequeathed to The New Jersey Historical Society." *Page 59 
The portrait mentioned is that of Captain James Lawrence, the naval hero. The memorandum referred to cannot be found.
The portrait possesses the attributes which such a chattel must have in order to invoke the jurisdiction of this court "whose principal value consists in its antiquity; or the production of some distinguished artist; or of its being a family relic, ornament or heirloom — such as ancient gems, metal coins, paintings of old and distinguished masters or even those of modern date having a peculiar distinction or value such as family pictures and portraits." Story Eq. Jur. (11th Ed.) 757, §709; Burr v. Bloomsburg, 101 N.J. Eq. 615.
Mary Lawrence Redmond left a son William Preston Redmond, who at the time of his mother's death was fourteen and one-half years old. It appears from the stipulated facts that in January, 1888, the portrait by Gilbert Stuart of Captain Lawrence which is referred to in the will was delivered to the defendant, New Jersey Historical Society, by one of the executors named in the will of Mary Lawrence Redmond. The portrait has ever since remained, and now is, in the possession of the defendant.
William Preston Redmond died on June 21st, 1938, leaving him surviving a widow and three children, all of whom are complainants herein. By his will William Preston Redmond devised and bequeathed all his property, real and personal, to his wife and, upon the death of his wife, the remainder to his three children, share and share alike, without making specific reference to the portrait in question. The complainants seek a decree that the defendant deliver up the possession of the portrait and that their title is an indefeasible fee. A determination of this question requires a construction of the above-quoted testamentary provision and an inquiry into the state of the title to the portrait at the time of the death of the testatrix.
The words "and his heirs" following the gift to William Preston Redmond are words of limitation, not of purchase, and he therefore obtains a gift in fee. 2 Simes Future Interests, 1936,§ 321; Fidelity Union Trust Co. v. Farley, 127 N.J. Eq. 346,349; 13 Atl. Rep. 2d 313; Zabriskie *Page 60 
v. Huyler, 62 N.J. Eq. 697; 51 Atl. Rep. 197; affirmed, 64 N.J. Eq. 794; 56 Atl. Rep. 1133; Ex'rs of Wintermute v. Ex'rs ofSnyder, 3 N.J. Eq. 489.
The effect of the gift over to the society "if my said son shall die leaving no descendants" must next be considered. The term "descendants" is at least as general in meaning as "issue" and in testamentary dispositions of this nature has been construed to be synonymous with "issue." 2 Jarman Wills (5thAmer. Ed. 1880) 632; Weehawken Ferry Co. v. Sisson, 17 N.J. Eq. 475,486. The gift over to the society is an executory bequest in fee, permissible ever since the statute of uses. Prior to that statute, gifts over which took effect by way of shifting use, such as in the case herein, and not by way of remainder, were void for the reason that at early common law a fee could not be limited upon a fee. As a result of the statute of wills and the statute of uses, shifting and springing uses, commonly called executory devises or bequests, became valid.
The early common law found another solution for saving gifts over of real estate limited upon a failure of issue. The estate of the first taker was cut from a fee-simple to a fee-tail with the result that the gift over took effect as a vested remainder limited upon a fee-tail. This construction with respect to real estate was applied even after the statute of wills and the statute of uses, although it was no longer necessary since the ultimate bequest had become valid as an executory devise. Personalty, however, could not be entailed and the gift over was necessarily construed as an executory bequest.
Since the defendant's interest in the portrait takes effect as an executory bequest limited upon a failure of issue, it must next be determined whether the court is to apply a "definite" or "indefinite" failure of issue construction. Since the testatrix died in 1887, the Rhode Island statute (R.I. Laws, 1896, ch. 202§ 24) which requires a definite failure of issue construction cannot be applied. Although the New Jersey statute providing for a similar construction (R.S. 3:2-17) was enacted in 1851, it is not a part of the common law and therefore cannot be considered. *Page 61 
With respect to both realty and personalty, the English authorities at common law early established the rule that the phrase "die without issue" must be presumptively construed as intending an indefinite failure of issue. Accordingly, in devises of realty, a fee-tail was created in the first taker with a vested remainder limited thereon. As to personalty, which could not be entailed, the same construction resulted in a fee-simple in the first taker followed by a shifting executory bequest in fee. The advent of the rule against perpetuities resulted in invalidating executory devises and bequests which were so limited that they could take effect beyond the period of perpetuities. Thus, by applying an indefinite construction to the phrase "die without issue," and invalidating the remote gift over under the rule against perpetuities, the estate of the first taker was enlarged into an indefeasible fee-simple.
In Rhode Island, at the time of the death of the testatrix, these principles of the English common law were applied to both realty and personalty. Cook v. Bucklin, 18 R.I. 666;29 Atl. Rep. 840; Langworthy v. Clarke, 53 R.I. 418;167 Atl. Rep. 127. As applied to personalty, the result was, as above, a void executory bequest which enlarged the interest of the first taker to an indefeasible fee-simple. Cook v. Bucklin, supra. In this case the court said: "It is also well settled that such language (die without issue) in a bequest of personal estate will vest the property absolutely in the first legatee, unless controlled by some expression in the will which indicates that a definite failure of issue was intended by the testator."
In this state the courts have also applied the indefinite construction to realty, Chetwood v. Winston, 40 N.J. Law 337;Hampton v. Newkirk, 93 N.J. Eq. 270; 115 Atl. Rep. 656;Executors of Condict v. King, 13 N.J. Eq. 375, and personalty.Davies' Administrator v. Steele's Administrator, 38 N.J. Eq. 168; Executors of Condict v. King, supra.
The common law courts, often loathe to invalidate gifts over on the ground of remoteness, looked with disfavor upon this necessary result of applying the indefinite construction to a gift over of personalty limited on a failure of issue. Accordingly, *Page 62 
to save such gifts, a line of authority arose in which the courts seized upon precise words in the will as expressions of the testator's intention and deemed them sufficient to rebut the common law presumption in favor of an indefinite failure of issue. Pells v. Brown, K.B. (1620) Cro. Jac. 590, Hughes
v. Sayer (1790), 1 P. Wms. 534; Den ex dem. Howell v.Howell, 20 N.J. Law 411; Groves v. Cox, 40 N.J. Law 40.
The gift over in the will of Mary Lawrence Redmond is limited: "if my said son shall die leaving no descendants." (Italics mine.) The word "leaving" used in this context has been taken by this and other courts to be evidence of the testator's intention that the failure of issue must occur, if at all, at the death of the first taker. The use of this word to rebut the common law presumption appears to be universally accepted at least as to personalty. 2 Simes Future Interests, 1936, § 340. Although no case is found in Rhode Island wherein the word "leaving" is similarly used, this court, in Woodward's Adm'r v. Woodward'sEx'rs, 16 N.J. Eq. 83, adopted this principle in applying a definite failure of issue construction to the ordinary gift of personalty.
The purpose in seeking out words such as "leaving" in order to apply constructional rules which will allow the application of a definite failure of issue was to save the gift over from being void ab initio under the rule against perpetuities. By applying a "definite failure of issue" construction, the gift over must vest, if at all, at the death of the first taker. If he leaves issue him surviving, the gift over fails to take effect and his interest becomes enlarged to a fee-simple indefeasible.
In this case, however, there is an additional element which makes it unnecessary to apply any rule of construction in order to save the gift over to the defendant. It is a charitable bequest and valid under the well recognized exception to the rule against perpetuities. In Rhode Island: Almy v. Jones,17 R.I. 265; 12 L.R.A. 414 (gift to an art museum); Bliven v. Borden,185 Atl. Rep. 239. In New Jersey: Mills v. Davison, 54 N.J. Eq. 659; 35 Atl. Rep. 1072.
Since, therefore, the gift to the Historical Society contained *Page 63 
in the will of Mary Lawrence Redmond was valid under the rule against perpetuities, even if the common law presumption in favor of indefinite failure of issue is applied, there is no necessity for calling upon rules of construction to rebut that presumption. The same conclusion must be reached whether I apply the law of Rhode Island as it existed at the date of the death of the testatrix herein or the common law of New Jersey. At the death of Mary Lawrence Redmond the title to the portrait was in her son, William Preston Redmond, in fee-simple, subject to being divested upon an indefinite failure of his descendants by a gift over in fee to the defendant, the New Jersey Historical Society.
All of the subsequent acts of the executor in transferring the possession of the portrait to the society and all of the acts of the society in accepting that possession, in noting the acquisition upon its minutes, in advertising its interest in the portrait and even in claiming an interest in the portrait under the will are wholly consistent with this conclusion. Nothing appears in the record to indicate that there was that kind of adverse claim made by the society at any time which could give rise to a cause of action in William Preston Redmond or which could by this time be barred by the statute of limitations or by laches. The statute of limitations did not begin to run until the demand was made by the legatees of William under his will. The possession of the defendant gave rise to a presumption that the possession was in good faith and not adverse.
At the death of William his will passed all his interest in the portrait to the complainants. They have a present possessory interest in the portrait under a fee-simple in themselves, subject, however, to being divested by a gift over in fee to the society upon the running out of the line of William's descendants. A reading of the will of Mary Lawrence Redmond in the light of the law as it existed at the date of her death leaves no doubt that this is what she intended. *Page 64